# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nᵒ 10-CV-1015 (JFB) (WDW)
_____

DEBORAH ENDERBY AND WILLIAM ENDERBY,

Plaintiffs,

VERSUS

SECRETS MAROMA BEACH RIVIERA CANCUN AND AM RESORTS, LLC,

Defendants.

_____

**MEMORANDUM AND ORDER**
December 1, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Deborah Enderby and William Enderby ("plaintiffs") commenced this personal injury action on March 8, 2010, against defendants Secrets Maroma Beach Riveria Cancun (hereinafter "the Hotel"), which is owned and operated by Playa Maroma Immuebles, S.A. de C.V., a Mexican corporation (collectively "Playa Maroma" or "the defendant") and AM Resorts, LLC.[1]

Specifically, plaintiff Deborah Enderby alleges that defendant is liable for injuries she sustained during a slip-and-fall accident while on vacation at the hotel, and her husband, William Enderby, alleges loss of services and consortium and incurred medical expenses related to her injuries.

Defendant Playa Maroma moved to dismiss all claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. At oral argument on October 22, 2010, in an abundance of caution, the Court granted plaintiffs limited discovery for the purposes of establishing personal jurisdiction over defendant. Following the conclusion of discovery, defendant has moved for summary judgment for lack of personal jurisdiction.

For the reasons set forth below, the Court grants defendant's motion for summary judgment in its entirety, and the complaint is dismissed for lack of personal jurisdiction. In particular, after carefully

---

[1] By stipulation dated June 21, 2010, plaintiffs discontinued this action with prejudice against AM Resorts, LLC. (_See_ ECF No. 8.)

reviewing the evidence in the light most favorable to the plaintiffs, the non-moving party, the Court concludes that the undisputed facts demonstrate that there is no basis for jurisdiction over the defendant pursuant to New York's general jurisdiction statute, N.Y. C.P.L.R. § 301. As a threshold matter, plaintiffs concede that they are not asserting personal jurisdiction under New York's long-arm statute, but rather are attempting to establish general jurisdiction over defendant Playa Maroma pursuant to N.Y. C.P.L.R. § 301. However, the Court concludes, applying the applicable standard under New York law, that the undisputed evidence demonstrates as a matter of law that no personal jurisdiction exists over defendant Playa Maroma in New York. In particular, it is undisputed that Playa Maroma and the Hotel (1) have no business operations within New York; (2) do not conduct business in New York; (3) are not authorized to do business in New York; (4) own no property in New York; (5) have no joint ventures within New York; (6) have no officers, directors, shareholders, employees, sale representatives or agents regularly or routinely in the State of New York; (7) have no bank accounts in New York; (8) have no telephone numbers in New York; (9) do not target residents in New York with unsolicited telephone calls, facsimiles, correspondence, or email; (10) do not pay taxes or file tax returns in New York; and (11) do not place advertisements in New York. Given these undisputed facts, it is clear that no general jurisdiction exists over the defendant.

The mere facts that print advertisements regarding the hotel are occasionally placed through independent travel agents in New York and that one New York travel agent may book rooms at the Hotel from an allotment of rooms made available by the hotel are insufficient, as a matter of New York law, to create general jurisdiction. Plaintiffs attempt to create personal jurisdiction through two travel agencies in New York – namely, Travel Impressions of Farmingdale, New York and GoGo Worldwide Tours of Lake Success, New York – which plaintiffs argue have the ability to confirm reservations, by contract, with the defendant. However, the undisputed facts demonstrate that the activities of those two travel agencies, as a matter of law, are insufficient to create personal jurisdiction in New York. First, with respect to Travel Impressions, the contract does not involve Playa Maroma; rather, the agreement is between Hoteles De Caribe (a British Virgin Islands company) and Travel Impressions for rooms at the Hotel. Moreover, the contract between these two entities relates only to an allotment of rooms and explicitly states that the sales company (Hoteles De Caribe) can modify the room allotment with prior notification to Travel Impressions. Similarly, it is undisputed that Travel Impressions is a wholesaler travel agent that solicits business from other entities beyond Hoteles De Caribe. Also, with respect to GoGo Worldwide Tours of Lake Success, the contract at issue is not with the New York entity; rather, it is between LibGo, a New Jersey corporation, and the defendant. The nature of the relationship between the New Jersey corporation and the New York entity has not been demonstrated by the plaintiff. In any event, even assuming *arguendo* that the New York entity had a contractual relationship with the defendant through LibGo in New Jersey, it is undisputed that any grant of authority to LibGo to bind the defendant only related to an allotment of rooms. In other words, it is uncontroverted that the travel agency has no grant of authority outside the allotment, and provides no other services for the defendant. In addition, it is also undisputed that LibGo is a

wholesaler travel agent with relationships with other resorts. In short, there is no evidence that the reservation services provided by these travel agencies are so important to defendant that, if they did not supply them, defendant would be forced to establish its own presence in New York to replace them.

Finally, although defendant has a web page with information about the Hotel, as counsel for plaintiffs' counsel conceded at oral argument, the fact that this website is accessible to New Yorkers on the web is insufficient to confer jurisdiction. Accordingly, as discussed in detail below, defendant's motion for summary judgment for lack of personal jurisdiction is granted.

## I. BACKGROUND

### A. Facts

The facts described below are taken from the parties' affidavits, exhibits and the parties respective Rule 56.1 statement of facts ("Def.'s 56.1" and "Pls.' 56.1"). Unless otherwise noted, the facts are undisputed.[2]   Upon consideration of the

motion for summary judgment, the Court shall construe the facts in the light most favorable to plaintiffs, the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### 1. Discovery

As indicated *supra*, at oral argument on October 22, 2010, the parties were permitted to conduct discovery on jurisdictional issues. Specifically, plaintiffs had argued that GoGo Worldwide Tours of Lake Success, New York ("GoGo Worldwide") and Travel Impressions, Ltd of Farmingdale, New York

---

[2] As a preliminary matter, defendant contends that all of the factual contentions set forth in Def.'s 56.1 should be deemed admitted. Specifically, defendant argues that, although plaintiffs deny some of the defendant's contentions, plaintiffs fail to cite any evidence to support their denials or provide any allegations, even unsupported, explaining why defendant's factual contentions are inaccurate. (Def.'s Reply Decl. ¶¶ 4-5.) Where a party, in its counterstatement, fails to comply with Local Rule 56.1, a district court has "broad discretion ... to overlook a party's failure to comply with local court rules" and otherwise review the record independently, including where one of the parties has failed to file a Local Rule 56.1 statement regarding the disputed issues of material fact for summary judgment. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001); *see also Di Rienzo v. Metro. Transp. Auth.*, 237 Fed. App'x. 642, 646 (2d Cir. June 20, 2007) (noting that on remand, district court

had to "decide whether to consider only the facts in Defendants' [uncontested] Rule 56.1 Statement or, in an exercise of its discretion, to consider other facts contained in the record"); *Schroeder v. Suffolk Co. Cmty. Coll.*, No. 07-CV-2060 (JFB), 2009 WL 1748869, at *1 n. 1 (E.D.N.Y. June 22, 2009) (overlooking non-movants failure to file counter-statement of material facts pursuant to Local Rule 56.1; denying summary judgment); *Pender v. State of N.Y. Office of Mental Retardation and Developmental Disabilities*, No. 02-CV-2438 (JFB), 2006 WL 2013863, at *1 n. 1 (E.D.N.Y. July 18, 2006) (overlooking party's failure to submit counter-statement of material facts pursuant to Local Rule 56.1), *aff'd*, 225 Fed. Appx. 17 (2d Cir. May 25, 2007). In fact, courts need to be wary of use of that rule as a technical vehicle to relieve the movant's burden in a motion for summary judgment. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (noting that the fact that plaintiff failed to comply with Local Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 Statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record"). Here, although all of plaintiffs' responses fail to comply with Local Rule 56.1, plaintiffs' memorandum of law enumerates some of their denials with appropriate record citations, which cures those defects in Pls.' 56.1. Accordingly, in the exercise of its broad discretion, where plaintiffs have denied or objected to an assertion by defendant, the Court deems that assertion disputed where plaintiffs provide admissible evidence to support their denial or objection.

("Travel Impressions") (collectively the "travel agencies"), are agents of the defendant and, thus, the defendant is subject to New York's general jurisdiction statute, N.Y. C.P.L.R. § 301.  In November 2010, plaintiffs requested document production with respect to defendant's contracts and documents with the travel agencies. Defendant had no responsive documents. Subsequently, in December 2010, plaintiffs subpoenaed the travel agencies for similar documents.  The travel agencies responded and plaintiffs included the documents within their opposition papers.  Plaintiffs conducted no further discovery.  Discovery ended on February 2, 2011.

### 2.  The Parties

Secrets Maroma Beach Riviera Cancun is a hotel located in Solidaridad, Quintana Roo, Mexico.  (Def.'s 56.1 ¶ 2.)  The Hotel is the only property owned by Playa Maroma S.A. de C.V., a Mexican corporation.  (Def.'s 56.1 ¶¶ 3-4; (Def.'s Ex. A, Affidavit of Saul Gomez, Controller of Playa Maroma (hereinafter "Gomez Aff.") ¶¶ 1, 7.)  The hotel is a luxury resort that receives guests from around the world, including from various states within the United States of America.  (Def.'s 56.1 ¶ 6.)

Plaintiff Deborah Enderby is a resident of Shoreham, New York.  (See Pls. Ex. 13, D. Enderby Aff. ¶ 1.)  Deborah Enderby has been a travel agent for nine years and is currently a travel agent for Elegant Touch Travel.  (Id. ¶ 5.)  On October 5, 2008, Deborah Enderby was involved in an accident occurring at the Secrets Maroma Beach Riviera Cancun hotel.  (Pls. Ex. 13, D. Enderby Aff. ¶ 3; Def.'s 56.1 ¶ 1.)[3]

Plaintiff claims to be a "Master Agent"

for Secret Resorts and Spas and attached a copy of the front and back of an identification card.  (D. Enderby Aff. ¶ 5.)  On the front, the identification card reads:

AM Resorts
Master Agent

Deborah Enderby
EXP 08/28/2011

(Pls.' Ex. 14.)

On the back, the identification card states that the card is only valid for one year after the date of issue and below that lists various hotel brands: "Zoetry Wellness & Spas," "Secrets Resorts & Spas," "Dreams Resorts & Spas," and "Now Resorts & Spas" and says "TM Licensed to AM Resorts."  Defendant contends that Ms. Enderby's designation as a Master Agent has nothing to do with Playa Maroma or the Hotel.  (Gomez. Aff. ¶ 11.)  First, the defendant Hotel, Secrets Maroma Beach Riviera Cancun, is not mentioned on the card and defendant contends that neither Playa Maroma nor the Hotel issue "the designation of 'Master Agent' . . . and have never issued such a designation to Ms. Enderby."  (Gomez. Aff. ¶ 13.)  Second, defendant states that "AM Resorts is an independent company that provides advertising, marketing and brand management services to various hotel brands in the Caribbean and Mexico, one of which is Secrets Resorts & Spas."  (Gomez. Aff. ¶ 12.)[4]  Secrets Resorts & Spas is comprised of seven hotels, one of which is defendant's Hotel.  (Id.).  Finally, defendant has no direct contractual relations with AM Resorts.  (Id.)

---

[3]  Plaintiffs have not provided any information regarding how they booked their vacation at the Hotel.

[4]  Indeed, by stipulation dated June 21, 2010, plaintiffs discontinued this action with prejudice against AM Resorts, LLC.  See supra, footnote 2.

### 3.   Contacts with New York

#### a.   Common Factors

It is undisputed that neither Playa Maroma nor the hotel: (1) have any business operations, are authorized to do business or conduct business within the State of New York (Def.'s 56.1 ¶¶ 7-9; Gomez Aff. ¶ 9.), (2) own any property or have joint ventures within the State of New York (Def.'s 56.1 ¶¶ 10-11; Gomez Aff. ¶ 9.), (3) have officers, directors, shareholders, employees, sales representatives or agents "regularly or routinely" in the State of New York (Def.'s 56.1 ¶ 12; Gomez Aff. ¶ 9.), (4) have any bank accounts or phone numbers within the State of New York (Def.'s 56.1 ¶¶ 13-14; Gomez Aff. ¶ 9.), or (5) pay taxes or file tax returns in the State of New York. (Def.'s 56.1 ¶ 16; Gomez Aff. ¶ 9.)

#### b.   Agency

On November 1, 2010, plaintiffs demanded that defendant produce the following true and correct copies of documents that were in effect on or about October 5, 2008:

1. [T]he contract between GoGo Worldwide Tours, Branch 227, 1979 Marcus Avenue, Lake Success, New York and Secrets Maroma Beach Riviera Cancun.

2. [A]ll written instructions and/or directives for confirmations of reservations and/or licensing agreements between GoGo Worldwide Tours . . . and Secrets Maroma Beach Riviera Cancun.

3. [T]he contract between Travel Impressions, Ltd., 465 Smith Street, Farmingdale, New York 11735 Branch 227, 1979 Marcus Avenue, Lake Success, New York and Secrets Maroma Beach Riviera Cancun.

4. [A]ll written instructions and/or directives for confirmations of reservations and/or licensing agreements between Travel Impressions, Ltd., . . . and Secrets Maroma Beach Riviera Cancun.

(*See* Pls.' Ex. 4.)

On December 9, 2010, defendant responded that on October 5, 2008, Playa Maroma "did not have written instructions and/or directives for confirmations of reservations and/or licensing agreements," or a contract "with GoGo Worldwide Tours, Branch 227, 1979 Marcus Avenue, Lake Success, New York" or "Travel Impressions, Ltd., 465 Smith Street, Farmingdale, New York 11735." (*See* Pls.' Ex. 5.)

In December 2010, plaintiff served both GoGo Worldwide and Travel Impressions with subpoenas demanding production of the same above-referenced documents with "Secrets Maroma Beach Riviera/Maya Cancun, Playa Maroma Inmuebles S.A. De CV or any affiliates." (Pls.' Ex. 6.)

##### i.   GoGo Worldwide

With respect to the subpoena served upon GoGo Worldwide, plaintiffs received a contract between LibGo Travel, Inc. (hereinafter "LibGo Travel") and Secrets Maroma Beach Riviera Cancun, dated January 24, 2009.[5]   (*See* Pls.' Ex. 9.) LibGo Travel is a company incorporated in

---

[5]   The contract is a Playa Maroma business record. (Gomez Aff. ¶ 18, Ex. 3.)

the State of New Jersey.  (Def.'s 56.1 ¶ 29; Gomez Aff. Ex. 3; Pls.' Ex. 9.)[6]  This contract was negotiated and executed over the internet.  (Def.'s 56.1 ¶ 29; Gomez Aff. ¶ 25.)

By letter dated January 10, 2011, plaintiffs' counsel requested further information from GoGo Worldwide about the contract.  (Pls.' Ex. 10.)[7]  Specifically, plaintiff's counsel requested "documents or letter concerning the manner in which GoGo does business with [defendant's] reservations, which the contract does not make clear. . . . In other words, a detailed description of all the business done by GoGo, which [defendant] would do in New York were it here by its officials beyond "mere solicitation."  (Pls.' Ex. 10.)

By letter dated January 17, 201[1],[8] Ms. Laurene Taylor, Manager-Legal Department, of GoGo Worldwide Vacations, located in Ramsey, New Jersey, responded.[9] She explained:

Further to your January 10th letter, below is the description of all the business done by FCUSA, Inc and Secrets Maroma Beach.

FC USA Inc dba LibGo Travel contracts with Secrets Maroma Beach Riviera Cancun ("Secrets") to offer for the sale of rooms at the Secrets property, to clients of FC USA Inc dba GOGO Worldwide Vacations, Liberty Travel and their affiliates worldwide.  Pursuant to the contract, a number of hotel rooms for the Secrets property are "allocated" to LibGo Travel.  Such allocations are added to our database and offered for sale to clients of GOGO Worldwide Vacations, Liberty Travel and FC USA Inc's affiliates worldwide.  There is no obligation on the part of LibGo Travel to sell these rooms 'allocated'.  LibGo Travel is invoiced by Secrets only after a client has stayed at Secrets, not prior.  Such invoices are received and processed at LibGo Travel's head office in Ramsey, New Jersey.

(Pls.' Ex. 11.)

Accordingly, between the defendant's submissions and correspondence received from the New Jersey entity, it is undisputed that defendant contracted with LibGo Travel to provide an allotment of rooms for booking through LibGo Travel's reservation system.  (Def.'s 56.1 ¶ 25; Gomez Aff. ¶

---

[6]   Furthermore, on the first page of the contract, under the heading of "PARTIES," it states that LibGo Travel is "a company incorporated in New Jersey." (*Id.* at 1.)  In addition, further down the page, in section 5(c), the contract specifies that all invoices should be sent to "LibGo Travel, 69 Spring Street, Ramsey, New Jersey 07446.  (*Id.*)

[7]   The Court notes that, although the above-referenced contract specified the party as  LibGo Travel, a New Jersey corporation, with a Ramsey, New Jersey address, plaintiff's counsel addressed his inquiry to GoGo Worldwide, Lake Success, New York.

[8]   The Court notes that the letter is addressed January 17, 2010.  However, because the letter clearly in response to plaintiffs' letter dated January 10, 2011, the Court concludes that the letter's accurate date is January 17, 2011.

[9]   As noted *supra*, although plaintiffs address the January 10, 2011 letter to GoGo Worldwide Tours in Lake Success, New York, GoGo Worldwide Vacations, located 69 Spring Street, Ramsey, New

Jersey responded.  The Court notes that this is the same address provided for LibGo Travel in the above-referenced contract.  As discussed *infra*, plaintiffs provide no evidence regarding the relationship between LibGo Travel of Ramsey, New Jersey, GoGo Worldwide Tours of Lake Success, New York or GoGo Worldwide Vacations of Ramsey, New Jersey.

20.)[10]   However, LibGo Travel is under no obligation to sell the allocated rooms and is invoiced only after a client has stayed at the Hotel.   (Pls.' Ex. 11.)   Invoices are processed at LibGo Travel's headquarters in Ramsey, New Jersey.  (Pls.' Ex. 11.)

LibGo Travel offers the rooms to its worldwide affiliates and they use the reservation system to book directly with LibGo Travel.   (Def.'s 56.1 ¶¶ 26, 28; Gomez Aff. ¶¶ 21-22; Pls.' Ex 11.)  LibGo has no independent authority to make reservations on defendant's behalf; it can only book rooms at the Hotel through this allotment.  (Def.'s 56.1 ¶ 28; Gomez Aff. ¶ 22.)   Plaintiffs provide no evidence regarding the relationship between LibGo Travel, GoGo Worldwide Vacations and GoGo Worldwide Tours and no evidence regarding whether any rooms were booked from this allotment by the New York based GoGo Worldwide Tours for New York residents.

### ii.  Travel Impressions

With respect to the subpoena served upon Travel Impressions, plaintiffs received a contract between Hoteles Del Caribe Holdings, Ltd., a Tortola, British Virgin Islands corporation ("Hoteles De Caribe"), and Travel Impressions.   (*See* Pls.' Ex. 12.)[11]   Defendant is not a party to the

contract between Hoteles De Caribe and Travel Impressions.  (*Id.*) Instead, defendant contracted with Hoteles Del Caribe to provide it with with an allotment of rooms that are available for bookings. (Def.'s 56.1 ¶ 21; Gomez Aff. ¶¶ 15-16.)  Hoteles Del Caribe allows independent travel agents to book rooms at the hotel from its allotment and deals with them directly.  (Def.'s 56.1 ¶ 22; Gomez Aff.  ¶ 16.)   One of the independent travel agents that Hoteles De Caribe contracted with is Travel Impressions of Farmingdale, New York.  (Pls.' Ex. 12.)[12]

### c.  Internet Activity

It is undisputed that information for, and bookings at, the defendant's Hotel is available through the internet at "secretsresorts.com." (Def.'s 56.1 ¶ 19-20.)  However, there is no evidence that you can book reservations electronically through the website.   Plaintiffs have provided no evidence regarding the number of reservations made through, or revenue derived from any website, or what percentage of each is attributed to New York residents.

Plaintiffs also enclosed various screenshots of webpages within their exhibits.[13] (*See* Pls.' Ex. 7.)  However, these

---

[10]   Defendant also provides information, including but not limited to rates, amenities, booking conditions and the cancellation policy, for posting on LibGo's reservation system (Def.'s 56.1 ¶¶ 23-24; Gomez Aff. ¶¶ 18-19, Ex. 3.)

[11]  Plaintiffs' counsel states that defendant's response "while literally correct, it was misleading and not wholly forthcoming." (J. Mulvehill Decl. ¶ 4.)  The Court disagrees.   Plaintiffs' request to produce specifically requested documents and contracts between defendant and GoGo Worldwide of Lake Success, New York and Travel Impressions of Farmingdale, New York.   As the undisputed facts

demonstrate, defendant has neither contracts nor documents responsive to plaintiffs' request.

[12]  Plaintiffs have attached what they allege is the contract between Hoteles De Caribe and Travel Impressions.  Plaintiffs did not provide an affidavit authenticating the contract, and defendant contends that it is not a Playa Maroma business record.  In any event, even assuming *arguendo* that the contract is admissible as a business record, there is still no personal jurisdiction over defendant for the reasons discussed *infra*.

[13]   The Court notes that plaintiffs do not reference this exhibit within their papers.  In an abundance of caution, the Court has carefully examined all of the exhibits submitted by plaintiffs to analyze whether

other screenshots simply document unsuccessful efforts by plaintiffs to locate other internet sites that are related to the Hotel or Playa Maroma.

## B.  Procedural History

Plaintiffs filed their action on March 8, 2010.  On August 2, 2010, defendant moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, for dismissal under the *forum non conveniens* doctrine.  Plaintiffs filed their opposition to defendant's motion on September 3, 2010, and defendant filed its reply on September 15, 2010.  The Court heard oral argument on October 22, 2010.  At oral argument, the Court permitted limited jurisdictional discovery with respect to the nature of the relationship between the travel agencies and the defendant.[14]

The Court conducted two telephone conferences, on January 5, 2011 and February 2, 2011, with respect to the status of discovery.  As indicated *supra*, the parties agreed that discovery was complete at the February 2, 2011 conference.[15]  Defendant

---

defendant has such extensive and continuous contacts with New York to confer jurisdiction under Section 301.

[14]  Specifically, plaintiffs contended that GoGo Worldwide Tours, located in Lake Success, New York and Travel Impressions, Ltd., located in Farmingdale, New York, act as defendant's agent in New York.  (*See* Affidavit of Deborah Enderby, filed on September 3, 2010, in opposition of defendant's motion to dismiss, ¶ 5.)

[15]  At the same conference, the Court explained to the parties how to proceed where the jurisdictional issue is in dispute and discovery is complete.  Specifically, the Court cited *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) and stated that, if defendant is asserting that undisputed facts demonstrate the absence of jurisdiction, then defendant should file a motion for summary judgment.

moved for summary judgment on March 4, 2011.  Plaintiffs filed their opposition on April 1, 2011, and defendant filed its reply on April 15, 2011.  The Court heard oral argument on June 22, 2011.[16]

This motion is fully submitted, and the Court has considered all of the submissions and arguments of the parties.

## II.  STANDARD OF REVIEW

The standards for summary judgment are well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that he or she is entitled to summary judgment.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W.*

---

[16]  The Court also considered additional documentation submitted to the Court by plaintiffs' counsel at oral argument.

8

*Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone "will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions where the jurisdictional issue is in dispute:

> If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought. If the defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence.

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citations omitted).

In the instant action, following discovery, defendant filed a motion for summary judgment regarding the issue of jurisdiction. For the reasons stated below, the Court concludes that the undisputed facts demonstrate the absence of jurisdiction over the defendant.[17]

## III. DISCUSSION

Defendant has moved for summary judgment for lack of personal jurisdiction. Plaintiffs argue that this court has jurisdiction over Playa Maroma on several grounds. First, plaintiffs contend that GoGo Worldwide Tours of Lake Success, New

---

[17] The Court did not require a hearing for plaintiffs to prove their facts by a preponderance of the evidence because that is a standard of proof appropriate for resolving disputed issues of fact and, here, the Court has determined that the undisputed facts demonstrate the absence of jurisdiction over the defendant as a matter of law. *See Ball*, 902 F.2d at 197-98.

York and Travel Impressions of Farmingdale, New York, are agents of the defendant and, thus, the defendant is subject to New York's general jurisdiction statute, N.Y. C.P.L.R. § 301. Second, plaintiffs contend that defendant's maintenance of a website that is accessible to New York residents is sufficient to confer jurisdiction. For the reasons set forth below, the Court grants defendant's motion for summary judgment in its entirety. Specifically, as a threshold matter, plaintiffs have provided no evidence that defendant has contracted with either New York-based travel agency – that is, GoGo Worldwide or Travel Impressions – or that the travel agencies have the power to bind the defendant. Even assuming the defendant had contracted with the travel agencies and they had the power to bind the defendant, plaintiffs provide no evidence that the travel agencies are doing all the business that defendant could do if it were here with its own officials. Indeed, plaintiffs provide no evidence that defendant derived *any* revenue from *any* New York resident. With respect to defendant's internet activity, plaintiffs provide no evidence that defendant operates an interactive website of such a nature to confer jurisdiction. In short, the Court concludes that the undisputed facts clearly demonstrate the absence of personal jurisdiction over the defendant.

### A. Personal Jurisdiction

It is well settled that "[i]n diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.* Thus, the district court should engage in a two-part analysis in resolving

personal jurisdiction issues: (1) whether New York law would confer jurisdiction by New York courts over defendants; and (2) whether the exercise of jurisdiction over defendants comports with the Due Process Clause of the Fourteenth Amendment. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *see Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 301 (E.D.N.Y. 2009). Here, because the Court concludes that plaintiffs have failed to raise any fact in dispute that would show that the requirements of New York's general jurisdiction statute had been met with respect to the defendant, no further discussion of whether such jurisdiction would satisfy due process is required. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) ("as the New York Court of Appeals has made clear, the constitutional analysis is a distinct step from the statutory one; it is only once the long-arm statute is deemed satisfied that the court need examine whether due process is likewise comported with.") (citing *LaMarca*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000)); *Bensusan Rest. Corp.*, 126 F.3d at 27 ("If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process").

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302. Here, plaintiffs rely only on New York's general jurisdiction statute, N.Y. C.P.L.R. § 301.[18] Plaintiffs assert that

---

[18]  Plaintiffs neither allege nor argue that defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," and that their cause of action arose out of that activity, or that the tortious act was committed within New York, or that the tortious act was committed

there are two bases for finding that the Court has personal general jurisdiction over defendant: (1) defendants use of travel agents with New York, and (2) defendant's website. As set forth below, the Court concludes that the undisputed facts demonstrate that neither of plaintiffs' bases for personal jurisdiction can satisfy the requirements of § 301. Accordingly, defendant's motion is granted in its entirety.

### 1. General Jurisdiction

Under New York's general jurisdiction statute, N.Y. C.P.L.R. § 301, a New York court may exercise general personal jurisdiction over a non-domiciliary corporation that is "doing business" in New York. *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (internal quotation marks omitted). The "doing business" standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006). A corporation is "doing business" in New York "if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267 (1917)); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d

Cir. 2000) (quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). To determine whether a foreign corporation is doing business in New York, courts focus on a set of common factors, including: whether the company has an office in the state; whether it has any bank accounts or other property in the state; whether it solicits business in the state; whether it has a phone listing in the state; whether it does public relations work in the state; and whether it has individuals permanently located in the state to promote its interests. *See Wiwa,* 226 F.3d at 98 (citing *Hoffritz,* 763 F.2d at 58; *Frummer,* 19 N.Y.2d at 537); *see also Sound Around Inc. v. Audiobahn, Inc.*, No. 07 CV 773 (RJD)(CLP), 2008 WL 5093599, at *4 (E.D.N.Y. Nov. 24, 2008). However, these factors are only intended to provide guidance – they do not amount to a "formula" for testing jurisdiction. As the Second Circuit has noted, "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts *as a whole.*" *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996) (emphasis in original); *see also Wiwa,* 226 F.3d at 95 (citing *Landoil Res. Corp.,* 918 F.2d at 1043) (a fact-specific inquiry is necessary to determine whether a corporation's contacts with New York demonstrate "continuous, permanent and substantial activity.")

Here, turning to the common factors assessed in a determination of whether a defendant is subject to jurisdiction under N.Y. C.P.L.R. § 301, it is undisputed that defendant does not maintain an office, a phone listing or employees in New York, and does not have bank accounts or other property in New York. Furthermore, it is undisputed that defendant's employees do not travel to New York and it does no public

_____

outside of New York "causing injury to person or property within the state." § 302(a)(1)-(3). Furthermore, at oral argument and in papers, plaintiffs conceded that they are not asserting that the Court has jurisdiction pursuant to New York's long-arm statute. Accordingly, the Court need not address whether the Court has personal jurisdiction pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a).

relations work in New York. (Def.'s 56.1 ¶¶ 7-14, 16; Gomez Aff. ¶ 9.) Accordingly, the Court concludes that the undisputed facts do not support the conclusion that defendant is present in New York on a continuous and systematic basis. However, the Court must determine, then, whether defendant can be deemed to be soliciting business in this State – namely, whether the travel agencies identified by plaintiffs can be considered agents of the defendant for jurisdictional purposes, and whether these factors, together or separately, properly confer jurisdiction.

## 2. Agency

Plaintiffs contend that GoGo Worldwide Tours of Lake Success, New York and Travel Impressions of Farmingdale, New York, are agents of the defendant and, thus, the defendant is subject to New York's general jurisdiction statute, N.Y. C.P.L.R. § 301. The Court disagrees. The Court concludes that plaintiffs have failed to provide any evidence to demonstrate that the travel agencies acted as agents for the defendant.

Under certain circumstances, the continuous presence and substantial activities that satisfy the requirement of "doing business" do not necessarily need to be conducted by the foreign corporation itself but, rather on account of its relationship with a subsidiary that is doing business in the state. Under those circumstances, the foreign parent is said to be doing business here because a domestic entity is either a "mere department" or "agent" of the foreign parent, and so attribution of the subsidiary's contacts to the parent is warranted. *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). "To come within the rule, the plaintiff need demonstrate neither a formal

agency agreement, nor that the defendant exercised direct control over its putative agent. The agent must be primarily employed by the defendant and not engaged in similar services for other clients." *Wiwa*, 226 F.3d at 95 (citation omitted); *see, e.g. Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 537, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967) (finding jurisdiction over foreign hotel chain based on the activities of affiliated New York-based reservations service); *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 481, 151 N.E.2d 874, 176 N.Y.S.2d 318 (1958) (holding that independent contractors with many clients are not considered agents of their individual clients for jurisdictional purposes); *see also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (to establish agency, "the plaintiff must show that the subsidiary does all the business which [the parent corporation] could do were it here by its own officials."); *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 929 (2d Cir. 1988) (applying *Frummer* to find jurisdiction over foreign hotel corporation due to reservation activities of subsidiary located in New York); *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 120-21 (2d Cir.1967) (applying *Frummer* to find jurisdiction over tour operator based on the activities of affiliated travel agent located in New York.)

As an initial matter, it is undisputed that the defendant did not contract with either New York-based travel agency. With respect to Travel Impressions, the contract provided by plaintiffs is between Hoteles De Caribe, a company incorporated in the British Virgin Islands, and Travel Impressions. With respect to GoGo Worldwide, the contract is between LibGo, a New Jersey corporation, and defendant. Although plaintiffs need not demonstrate a formal agency agreement to come within the

rule (*see Wiwa*, 226 F.3d at 95), plaintiffs seem to concede in their opposition papers (and at oral argument) that the contract with LibGo is the only piece of evidence relied upon to establish agency. Indeed, plaintiffs assert "Lib/Go Travel, Inc., is the contracting agent for GoGo Worldwide Vacations and GoGo Tours, GoGo and Travel Impressions, Ltd." (J. Mulvehill Decl. ¶ 17.) However, that argument is unsupported as plaintiffs provide no evidence regarding the relationship between LibGo Travel and the enumerated entities. Plaintiffs are merely asserting a conclusion to cure the evidence adduced through discovery. As such, "'conclusory non-fact-specific jurisdictional allegations' ... are insufficient to establish even a *prima facie* showing of personal jurisdiction under § 301." *Cornell v. Assicurazioni Generale, Consol.*, 97 Civ. 2262 (MBM), 98 Civ. 9186(MBM), 2000 WL 284222, at *1 (S.D.N.Y. Mar. 16, 2000) (quoting *Jazini*, 148 F.3d at 185); *Anderson*, 477 U.S. at 247-48 (it is insufficient for a party opposing summary judgment to rely on conjecture and "merely to assert a conclusion without supplying supporting arguments or facts") Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In any event, even assuming that LibGo Travel was a New York entity or that GoGo Worldwide was a party to the contract, plaintiffs provide no evidence that the travel agency could bind the defendant or that the services provided by the travel agency are so important that, if they were not there to provide them, defendant would be forced to establish its own presence in New York to

replace them.[19]

First, with respect to binding the defendant, it is undisputed that "[p]ursuant to the contract, a number of hotel rooms for the Secrets property are 'allocated' to LibGo Travel" (*see* Pls.' Ex. 11) and, thus, LibGo did not have a grant of authority to make reservations on defendant's behalf; it can only book rooms at the Hotel through this allotment. (Def.'s 56.1 ¶ 28; Gomez Aff. ¶ 22.) *See Brown v. Grand Hotel Eden*, 00 Civ. 7346 (NRB), 2003 WL 21496756, at *3 (S.D.N.Y. June 30, 2003) (courts interpreting *Frummer* have required that hotels grant full confirmation powers to their New York agents in order to assert jurisdiction); *see, e.g., Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 929-930 (2d Cir. 1988) (finding that hotel was subject to general jurisdiction in forum because a wholly-owned subsidiary was

---

[19] Here, because the Court concludes that plaintiffs have failed to raise any fact in dispute that would show Travel Impressions is an agent of defendant, no further discussion of that travel agency is necessary. In any event, the contract between these two entities relates only to an allotment of rooms and explicitly states that the sales company (Hoteles De Caribe) can modify the room allotment with prior notification to Travel Impressions. Similarly, it is undisputed that Travel Impressions is a wholesaler travel agent that solicits business from other entities beyond Hoteles De Caribe. Thus, even if there were a contractual relationship with the defendant, Travel Impressions would not provide a basis for personal jurisdiction in this case. *See, e.g., McCrann v. Riu Hotels S.A.*, No. 09 Civ. 9188 (CM), 2010 WL 5094396, at *4 (S.D.N.Y. Dec. 6, 2010) ("Travel Impressions performs similar services for numerous clients other than Riu…. In opposing the motion to dismiss, Plaintiffs – who have the burden of establishing jurisdiction – offer not a scintilla of evidence that Travel Impression is primarily employed by RDC Defendants. Therefore, the RDC Defendants (and specifically, Delta, which is the only RDC defendant that actually had a contract with Travel Impressions) are not subject to a New York court's jurisdiction on the basis of Delta's contractual relationship with Travel Impressions.").

located in forum and that such subsidiary had "the authority to make and confirm reservations without checking with the defendant"); *accord Heidle v. Prospect Reef Resort, Ltd.*, 364 F. Supp. 2d 312, 315 (W.D.N.Y. 2005) ("Absent an outright grant of authority to confirm reservations, an agent is not 'doing business' on behalf of a hotel.")   In other words, here, the travel agencies do not have the authority to bind defendant because defendant has already confirmed the reservations, in advance, by providing allocated rooms during time periods of defendant's choosing to the travel agency. *See Brown*, 2003 WL 21496756, at *5 ("Hotel Eden withholds from Summit the right to book rooms during time periods of Hotel Eden's choosing and thus Summit's power to reserve rooms is subject to the hotel's grant of authority. Absent an outright grant of authority to confirm reservations, an agent is not 'doing business' on behalf of a hotel.").[20]

In any event, plaintiffs provide no evidence as to whether LibGo is primarily employed by the defendant and not engaged in similar services for other clients.   Indeed, the LibGo contract explicitly provides that "nothing in this agreement obliges [LibGo] to book all or any of the [allocated rooms]. Pls.' Ex. 9 ¶ 4; *see also* Pls.' Ex. 11 ("There is no obligation on the part of LibGo Travel to sell these rooms 'allocated'."). Thus, because there is no obligation to do *any* business on behalf of defendant, the Court concludes LibGo is not "primarily employed" by defendant within the meaning of *Wiwa*. *See, e.g., Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 152 (S.D.N.Y. 2004) (quoting *Wiwa* for the proposition that, "[t]o find that a corporation is doing business in New York through an agent, a plaintiff must show that the agent is 'primarily employed by the defendant and not engaged in similar services for other clients'") (citation omitted); *see also Miller*, 4 N.Y.2d 481 (1958) (holding that independent contractors with many clients are not considered agents of their individual clients for jurisdictional purposes).

Nor do plaintiffs provide evidence with respect to whether defendant derived any revenue from New York with respect to its relationship with the travel agencies.[21] *See Gelfand*, 385 F.2d at 121) (finding jurisdiction where the local travel agent provided the foreign tour operators with three-sevenths of their business on a particular tour, totaling $120,000 a year). Indeed, the LibGo contract that plaintiffs rely upon never even mentions New York; rather, defendant's allocated rooms are made

---

[20]   In their opposition papers, to support their argument that the travel agencies are agents of defendant, plaintiffs rely on *Frummer*, 19 N.Y.2d 533 and *Engebretson v. Aruba Palm Beach Hotel*, 587 F. Supp. 844 (S.D.N.Y. 1984).   Those cases are inapposite.   First, in *Engebretson*, the foreign hotel defendant *contracted* with a local agent that did all the business the hotel could do if it were here in New York.   Engebretson, the local travel agent, entered into an agreement to serve as the Aruba hotel's representative in North America for two years. Under the agreement, Engebretson would solicit, make, and confirm reservations in the Aruba hotel, would promote the hotel, and would attend trade fairs to promote business and create demand for the hotel. In return for Engebretson's representation, the Aruba defendants would pay Engebretson three percent of the gross revenues generated from North America, irrespective of the source of the business.   Second, in *Frummer*, defendant Hilton (U.K.) and the local contact Hilton Reservation Service shared a common owner.   Furthermore, the reservation service did more than solicit clients for Hilton's hotels; it accepted reservations and confirmed them and it also actively promoted Hilton, leading the court to conclude that it did all that Hilton could do were it in New York.

[21]   The Court notes that this is not a case in which plaintiffs' efforts to marshal evidence with respect to this issue were frustrated by defendant's inability or unwillingness to supply revenue information. Plaintiffs' simply failed to inquire what portion of revenue resulted from bookings of New York residents.

available in LibGo's "Global Product Reservation System" for its customers worldwide. (Pls.' Ex. 9 ¶ 1, 13; Gomez Aff. ¶ 19.); *see also* Pls.' Ex. 11 ("allocations are added to [LibGo's] database and offered for sale to clients . . . [and] affiliates worldwide."). In addition, as discussed *supra*, according to the contract, LibGo is under no obligation to provide *any* business to defendant. Accordingly, the Court concludes that there is no evidence that LibGo does all the business that, if it were not there to provide such business services, defendant would be forced to establish its own presence in New York to replace LibGo. *See Jazini*, 148 F.3d at 184 (to establish agency, "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials'"); *see also Schottenstein v. Schottenstein*, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, *11 (S.D.N.Y. Nov. 8, 2004) ("Where the total amount of revenue derived from customers in New York is, for instance, 5% or less of a foreign defendant's revenues, courts … have found that the foreign defendant is not "doing business" in New York.") (collecting cases); *accord Holey Soles Holdings v. Foam Creations*, *Inc.,* No. 05 CV 6939, 2006 WL 1147963, at *5 (S.D.N.Y. May 1, 2006) (finding that one percent of revenues derived from New York did not amount to "substantial solicitation"); *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003) (finding the same where New York sales amounted to less than three percent of total revenue). Thus, any relationship by defendant with LibGo does not provide a basis for personal jurisdiction over the defendant in New York.

In sum, plaintiffs provide no evidence that there is a contractual relationship between defendant and either New York travel agency or that either can "bind" the defendant. In any event, plaintiffs provide (1) no evidence that the travel agencies are primarily employed by the defendant and not engaged in similar services for other clients, and (2) no evidence that defendant derived any revenue from New York through its purported New York agents. Accordingly, the Court concludes that, after construing plaintiffs' affidavits and documents in the light most favorable to plaintiffs, plaintiffs have failed as a matter of law to provide any facts that would warrant a finding that defendant is "doing business" in New York under an agency theory.

### 3. Internet Activity

Plaintiffs contend that defendant solicits business through its internet site and, thus, is subject to jurisdiction by this Court. For the reasons stated below, the Court concludes that the undisputed facts demonstrate the absence of personal jurisdiction over the defendant based upon any internet activity. The website "secretsresorts.com" – which contains information about defendant's Hotel and is operated by Secrets Resorts – is not of such an interactive nature as to confer jurisdiction under C.P.L.R. § 301.

As discussed *supra*, N.Y. C.P.L.R. §301 confers general jurisdiction over a defendant who engages in a continuous and systematic course of doing business such that the defendant is "present" in New York. When solicitation involves a website, "the fact that a foreign corporation has a website accessible to New York is insufficient to confer jurisdiction under C.P.L.R. § 301." *Sound Around*, 2008 WL 5093599, at *6 (quoting *Spencer Trask Ventures, Inc. v. Archos S.A.,* No. 01 CV 1169, 2002 WL 417192, at *6 (S.D.N.Y. Mar.18, 2002; *see also Garcia v. Nationwide Mach. Sales*, No. 08 CV 4167 (SJF), 2009 WL 2992574, at *

3 (E.D.N.Y. Sept. 16, 2009) ("[M]ere solicitation of business in the state without more is insufficient for jurisdiction.") A court must "examine the nature and quality of the activity" on the website, which may range from "passive websites that display but do not permit an exchange of information" to "interactive [websites], which permit the exchange of information between the defendant and [website] viewers," to "cases in which the defendant clearly does business over the internet." *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 74 (E.D.N.Y. 2006) (internal citations and quotations omitted).[22] An interactive website "may support the proposition that the defendant is doing business in the state." *Id.*

Plaintiffs contend that defendant solicits business through its internet site and, thus is subject to jurisdiction by this Court.[23] This argument lacks merit. First, the Court agrees with defendant's contention that plaintiffs have failed to identify a website operated by defendant.[24] As noted *supra*, plaintiffs attached a number of different screenshots of webpages. In Exhibit 7, plaintiffs identify a website, http://www.amresorts.com/email_list/, listing email address for different resorts, presumably for the proposition the defendant solicits business in New York.[25] (*See* Pls.' Ex. 7.) Although the site mentions the defendant's hotel in its listings,

---

[22] Most cases considering whether internet activity supports jurisdiction in New York do so in connection with NY CPLR § 302, which confers specific jurisdiction only, requiring a nexus between the cause of action and New York. In assessing whether internet activity is sufficient to confer jurisdiction, courts within the Second Circuit have taken the approach of evaluating where along a "spectrum" of internet activity a particular defendant's conduct falls. *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (collecting cases). At one end of the spectrum are "passive" sites: those sites that merely make information available on a website which can be viewed in New York and anywhere else the sites can be accessed. *Id.* Activity at this lower end of the spectrum, standing alone, does not amount to transacting business in the state for purposes of §302 and, thus, does not confer personal jurisdiction over the defendant. *Id.*; *See Bensusan,* 126 F. 3d at 26-29. In the middle of the spectrum are "interactive" web sites allowing users in the state to exchange information with the defendant and, at the far end of the spectrum, are websites over which the defendant is actively conducting business. *See Citigroup Inc.*, 97 F. Supp. 2d at 565; *see also Nat'l Football League v. Miller*, No. 99 Civ. 11846 (JSM), 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000).

[23] In their opposition papers, plaintiffs state that "[defendant] seeks and gets business through its solicitations 24 hours per day, 7 days per week, 365 days per year. It solicits and gets business directly in New York from the 8 million residents of the City of New York and another 8 million residents of the State of New York." (Pls.' Mem. of Law at 2.). That argument is simply insufficient. First, it is simply unsupported by any facts and is merely conclusory. *See BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) ("It is insufficient for a party opposing summary judgment 'merely to assert a conclusion without supplying supporting arguments or facts.') (citations omitted). Second, plaintiffs provide no evidence that defendant derived any revenue from a New York resident using its website.

[24] The Court notes that, although plaintiffs state that "[defendant] solicits directly through the Internet under the name secretsmaromabeachrivieracancun.com, (*see* Pls.' Mem. of Law at 2.), plaintiffs have failed to provide any documents referencing that website. Indeed, this statement contradicts their other statement that defendants do business through secretsresorts.com (*See* D. Enderby Aff. ¶ 2.). As discussed *infra*, plaintiffs have adduced no evidence that secretsresorts.com is operated by defendant.

[25] The Court notes that plaintiffs do not reference this exhibit. Although the Court is not required to dig through the submissions by the parties, in an abundance of caution, the Court has carefully examined all of the exhibits submitted by plaintiffs to analyze whether defendant has such extensive and continuous contacts with New York to confer jurisdiction under NY CPLR § 301.

by virtue of its Uniform Resource Locator ("URL") of http://www.amresorts.com/email_list, it appears that this website is from AM Resorts and is not operated by the defendant. (*See* Def.'s Reply Decl. ¶ 26).[26]  Likewise, plaintiffs argue that "secretsresorts.com" accepts reservations (*see* D. Enderby Aff. ¶ 2.), but offers no evidence that this website is operated by the defendant.  (*See* Def.'s Reply Decl. ¶ 14) ("Upon information and belief, "secretsresorts.com" is the website for Secrets Resorts and Spas.").  Furthermore, with respect to plaintiffs' Exhibit 8, the "Google" and "Yahoo" search pages, the Court concludes that they are insufficient to establish jurisdiction over the defendant.  The attached webpages merely display search results after the user entered the name of the Hotel.[27]   If New York courts were to consider a foreign corporation to be "present" in the state by virtue of its website appearing in search results, every foreign corporation with a website would be subject to jurisdiction by New York courts without any regard to the website's level of interactivity or its contacts with the forum state.

In any event, with respect to the "secretsresorts.com" website, plaintiff has adduced no evidence that it is more than a passive website and, thus, "the fact that a foreign corporation has a website accessible to New York is insufficient to confer jurisdiction under C.P.L.R. § 301."  *Sound Around*, 2008 WL 5093599, at *6; *see also McCrann v. Riu Hotels S.A.*, 2010 WL 5094396, at *4 ("[N]othing in the record suggests that Riu Hotels' website is purposefully directed towards New York.  It appears that the website is accessible to anyone with an Internet connection.  Therefore, under settled New York law, the existence of the website does not provide a basis for concluding that Riu Hotels – or any of the RDC Defendants – was 'doing business' in New York on a continuous and systematic basis as required for an assertion of general jurisdiction under C.P.L.R. § 301."); *Garcia*, 2009 WL 2992574, at * 3 ("[M]ere solicitation of business in the state without more is insufficient for jurisdiction."); *accord Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction." (citing *Bensusan*, 126 F.3d at 29)).  Plaintiffs only argue that the website accepts reservations because defendant advertises its phone number on its website.  (Pls.' Mem. of Law at 8-9.)  As initial matter, it is undisputed that defendant has no phone number within New York State.  (Def.'s 56.1 ¶¶ 13-14.)  In any event, notwithstanding the fact that the phone number referenced by plaintiffs and displayed on the site is a Mexican phone number (*see* Def.'s Reply Decl. ¶ 30; Pls.' Ex. 8.), it is well-established that this argument is woefully insufficient for the Court to find jurisdiction over the defendant.  *See, e.g. Cornell*, 2000 WL 284222, at *2 ("A firm does not 'do[ ] business' in New York simply because New York citizens can

---

[26]  As indicated *supra*, by stipulation dated June 21, 2010, plaintiffs discontinued this action with prejudice against AM Resorts, LLC.

[27]  For the Yahoo search pages, at the top of the web page there is a banner that states "Secrets Maroma Beach Riviera Cancun – Yahoo Search Results and the URL at the bottom of the web pages reads: http://www.search.yahoo.com/search?p=Secrets+Mar oma+Beach+Riviera+Cancun&ei=utf-8f... .   With respect to the Google search pages there is a banner that states "secretsmaromabeachrivieracancun.com.- Google Search."  In addition, the "Google" trademark name is displayed to the left of the search text box and the URL at the bottom of the web pages reads: "http://www.google.com/search?client=safari&rls=en &q=secretsmaromabeachrivieracancun.com.&ie=UT F-8&&oe=UTF-8"

contact the firm via the worldwide web.") Indeed, courts have held that websites that allow users to check on room availability, make reservations and interact with the foreign hotel are insufficient to confer jurisdiction. *See Rodriguez v. Circus Circus Casinos, Inc.*, No. 00 Civ. 6559 (GEL), 2001 WL 21244, at *2 (S.D.N.Y. Jan. 9, 2001) ("For jurisdictional purposes, there is no material difference between using the internet to make a reservation with an out-of-state entity and placing a telephone call to that entity for the same purpose.") (*citing Tripmasters, Inc. v. Hyatt Int'l Corp.*, 696 F. Supp. 925, 933, 933 n. 8 (S.D.N.Y.1988) (additional citations omitted)); *see also Hearst Corp. v. Goldberger*, 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) (defendant's e-mail correspondence with New Yorkers and maintenance of a website accessible here are insufficient to establish that defendant is "doing business" under C.P.L.R. § 301); *see Brown*, 2003 WL 21496756, at *4 ("The only interactivity Hotel Eden's website allows is the opportunity for users to inquire into room availability. Upon receiving these inquiries, the hotel responds, through e-mail or fax, with an offer if a suitable room is available; the user then must respond to the hotel to accept the offer. This type of interaction is similar to corresponding through a telephone and is insufficient to establish jurisdiction over the defendant.").

Finally*, plaintiffs have provided no evidence of defendant's sales derived from New York, if any, through the website. *See Sound Around*, 2008 WL 5093599, at *5 (when looking at whether a defendant corporation has solicited business in New York, "the volume of the defendant's sales in New York as a fraction of its total sales" is considered when determining whether a "solicitation-plus" [finding] can be made."); *see also Allojet PLC v. Vantage Assocs.*, No.

04 CV 5223, 2005 WL 612848, at *6 (S.D.N.Y. Mar. 15, 2005) (without any specific evidence of the volume and extent of defendants' solicitation in the documents submitted in opposition to the motion to dismiss, the court found that plaintiff had failed to make the requisite *prima facie* showing under C.P.L.R. § 301 where defendants maintained an "interactive" website where customers could place orders for products and exchange emails and chats with company representatives); *c.f. Schottenstein*, 2004 WL 2534155 (The court found jurisdiction under § 301 where an Ohio company that built homes in a number of states other than New York operated an interactive website that derived twenty percent of its revenues from New York customers. The Web site not only advertised the company's products, but permitted viewers to exchange information with the company, view sample homes in specific neighborhoods, and use an interactive calculator to determine how much they could spend. The site also enabled users to contact a customer service representative); *accord Garcia*, 2009 WL 2992574, at *3.

In other words, plaintiffs have submitted no evidence that this website is more than a passive website, and no evidence that defendant derives any revenue through it from New York. In sum, the Court, after construing plaintiffs' affidavits and documents in the light most favorable to plaintiffs, finds that plaintiffs have failed to provide any facts that would warrant a finding that defendant is "doing business" in New York through its internet activity.

Accordingly, based upon a careful review of the record, the Court concludes that the undisputed facts demonstrate that defendant has not engaged in a continuous, permanent or substantial course of business in New

York such that jurisdiction would be proper under § 301. Accordingly, defendant's motion for summary judgment on personal jurisdiction grounds is granted in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and the complaint is dismissed for lack of personal jurisdiction. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   December 1, 2011
          Central Islip, NY

Attorney for plaintiffs is John Mulvehill, 220 Cambon Avenue, St. James, New York 11780. Attorney for defendant is Patrick Denis Geraghty, Wilson, Elser, Moskowitz, Edleman & Dicker, LLP, 150 East 42nd Street, New York, New York 10017-5639.